## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| McRO, INC, d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1508-LPS-CJB |
| | ) | |
| ACTIVISION BLIZZARD, INC, | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------- | | |
| McRO, INC, d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1511-LPS-CJB |
| | ) | |
| INFINITY WARD, INC, | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------- | | |
| McRO, INC, d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1512-LPS-CJB |
| | ) | |
| LUCASARTS ENTERTAINMENT COMPANY LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ------------------------------------------------- | | |
| McRO, INC, d/b/a PLANET BLUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1518-LPS-CJB |
| | ) | |
| WARNER BROS. INTERACTIVE ENTERTAINMENT INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff McRo, Inc., d/b/a Planet Blue ("McRo" or "Plaintiff") filed the instant four

actions for patent infringement against defendants Activision Blizzard, Inc. ("Activision"),

Infinity Ward, Inc. ("Infinity Ward"), LucasArts Entertainment Company LLC ("LucasArts") and

Warner Bros. Interactive Entertainment Inc. ("Warner Brothers") (collectively, "Defendants").

Presently pending before the Court is Defendants' joint motion to transfer venue to the Central

District of California ("Motion").  (D.I. 23)[1]  For the reasons that follow, the Court recommends

that Defendants' Motion be GRANTED.[2]

## I.    BACKGROUND

### A.    The Parties

Plaintiff McRo is a Delaware corporation with its principal place of business in Marina

del Rey, California, located in the Central District of California ("Central District").[3]  (D.I. 30 at

---

[1]       The docket numbers with respect to the documents referenced herein are identical in all four cases.  Citations to a docket index ("D.I.") number are accurate as to any of the four dockets at issue.

[2]       There is a split of authority in the courts as to whether a motion to transfer venue should be treated as a dispositive or non-dispositive motion.  *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 174499, at *1 & n.1 (D. Del. Jan. 16, 2013); *see also McKee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770 (D. Del. Mar. 20, 2013) (titling decision on motion to transfer venue as "Report and Recommendation"), *report and recommendation adopted*, 2013 WL 2456719 (D. Del. June 5, 2013).  There is, however, recent precedent from our Court suggesting that such a motion is most properly treated as not dispositive.  *See, e.g., In re Heckmann Corp. Secs. Litig.*, C.A. No. 10-378-LPS-MPT, 2011 WL 1219230, at *1 (D. Del. Mar. 31, 2011).  In an abundance of caution, the Court will title this document as a "Report and Recommendation."

[3]       At the time of the filing of the initial complaints in these actions, McRo's principal place of business was in Santa Monica, California, (D.I. 1 at ¶ 1); like Marina del Rey, Santa Monica is located in the Central District.

2) According to McRo, the company is "actively involved in the advertising industry as a computer graphic, visual effects, and animation services company[.]" (D.I. 1 at ¶ 1; D.I. 30 at 2)

Defendants are all companies active in the video game industry and are all incorporated in Delaware. (*See* D.I. 1 at ¶ 2; D.I. 24 at 1) Activision, Infinity Ward, LucasArts and Warner Brothers have their principal places of business in Santa Monica, Los Angeles, San Francisco and Burbank, California, respectively. (D.I. 1 at ¶ 2; D.I. 24 at 1) Aside from LucasArts (whose place of business is located in the neighboring Northern District of California), each of these locations is within the Central District. (*See* D.I. 1 at ¶ 2; D.I. 24 at 1) Although Defendants are incorporated in Delaware, none has a facility in the state. (D.I. 24 at 2)

## B.    Procedural Background

The instant four cases are among thirteen related cases filed in this District by Plaintiff ("the Delaware Actions"). Plaintiff filed eleven of these related cases—including these four—on November 21, 2012.[4] (*See* D.I. 1; D.I. 24 at 1) Plaintiff filed one of the remaining cases on June 6, 2013, and the other on October 25, 2013.[5] All of the thirteen cases are assigned to Judge Leonard P. Stark, all have been referred to the Court by Judge Stark for all purposes up to and including the resolution of case-dispositive motions, and all remain pending. No Rule 16 or Rule 26 Conference has yet been held in any of these cases, nor has any discovery taken place.

These related cases all allege infringement of United States Patent Nos. 6,307,576 and

---

[4]    The case numbers for the other seven cases filed on November 21, 2012 are:  12-1509-LPS-CJB; 12-1510-LPS-CJB; 12-1513-LPS-CJB; 12-1514-LPS-CJB; 12-1515-LPS-CJB; 12-1517-LPS-CJB; and 12-1519-LPS-CJB.

[5]    The case numbers for these two cases are 13-1017-LPS-CJB and 13-1756-LPS-CJB, respectively.

6,611,278 (collectively, the "patents-in-suit"), patents that "cover a method and system for automating the lip-synchronization process for three dimensional animated characters, as used in computer and/or video games." (*See* D.I. 30 at 1; D.I. 14 at ¶ 10)   McRo alleges that Defendants infringed these patents by "employ[ing] automated lip-synchronization methods and processes to create and develop [ ] computer and/or video games" that are "purchased by consumers in the United States [and] the State of Delaware[.]" (D.I. 14 at ¶¶ 11-12, 14, 18)

Plaintiff filed a First Amended Complaint in all four of the instant cases on February 28, 2013. (D.I. 14)  In lieu of filing an Answer, on March 18, 2013, Defendants jointly filed a motion to dismiss the First Amended Complaint pursuant to Rule 12(b)(6). (D.I. 16)  That motion remains pending.

On July 29, 2013, Defendants jointly filed the instant Motion, seeking to have these actions transferred to the Central District pursuant to 28 U.S.C. § 1404(a). (D.I. 23)  Plaintiff opposes this Motion, and requests limited "jurisdictional discovery" if the Court is not convinced it should be denied. (D.I. 30 at 19-20)  Briefing on the instant motion was completed on August 26, 2013. (D.I. 32)

### C.   The Central District Actions

On December 4, 2012, less than two weeks after filing the instant actions (and seven others) in this District, McRo filed sixteen other cases in the Central District (collectively, the "Central District Actions").[6] (D.I. 24 at 1 & 6 n.2)  The Central District Actions allege

---

[6]     The case numbers for these sixteen actions in the Central District are: 12-cv-10322-GW-FFM; 12-cv-10323-GW-FFM; 12-cv-10326-GW-FFM; 12-cv-10327-GW-FFM; 12-cv-10329-GW-FFM; 12-cv-10331-GW-FFM; 12-cv-10333-GW-FFM; 12-cv-10335-GW-FFM; 12-cv-10336-GW-FFM; 12-cv-10337-GW-FFM; 12-cv-10338-GW-FFM; 12-cv-10340-GW-FFM; 12-cv-10341-GW-FFM;

infringement of the same patents-in-suit by various video game companies, including some companies that are affiliated with Defendants here. (*Id.* at 1-2)  As in the instant actions, McRo's allegations of infringement in the Central District Actions are based on the "alleged use of software processes . . . that automatically perform lip-synchronization of three-dimensional characters[.]"  (*Id.* at 17 (internal quotation marks and citation omitted))

## II.     DISCUSSION

### A.     Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.  It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

#### 1.     Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue.  "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance."  *Mallinckrodt Inc. v. E–Z–Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal quotation marks and citations omitted).  Here, there is no dispute that this infringement action could have been properly brought in the Central District. (D.I. 24 at 4); *see also* 28 U.S.C. § 1400(b).

#### 2.     Applicable Legal Standards

"[S]ection 1404(a) was intended to vest district courts with broad discretion to determine,

---

12-cv-10342-GW-FFM; 12-cv-10344-GW-FFM; and 12-cv-10345-GW-FFM.

on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)). The United States Court of Appeals for the Third Circuit has emphasized that when considering a motion to transfer venue pursuant to Section 1404(a), "courts normally defer to a plaintiff's choice of forum" and thus "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879-80 (internal quotation marks and citation omitted). This general principle, drawn from the historic respect accorded a plaintiff's choice of venue, suggests that "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citation omitted).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]" *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). Accordingly, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at *2 (D. Del. July 30, 2010); *see also Illumina, Inc. v. Complete Genomics, Inc.*, Civil Action No. 10-649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no definitive formula or list of . . . factors to consider[.]" *Jumara*, 55 F.3d at 879. Instead, courts

6

must analyze "all relevant factors" to determine whether "the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Id.* (internal

quotation marks and citation omitted).  Nevertheless, in *Jumara*, the Third Circuit identified a set

of private interest and public interest factors that should be taken into account in this analysis

(the "*Jumara* factors").  The private interest factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original choice,
> [2] the defendant's preference, [3] whether the claim arose elsewhere, [4]
> the convenience of the parties as indicated by their relative physical and
> financial condition, [5] the convenience of the witnesses—but only to the
> extent that the witnesses may actually be unavailable for trial in one of the
> fora . . . and [6] the location of books and records (similarly limited to the
> extent that the files could not be produced in the alternative forum).

*Id.* at 879.  The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations that
> could make the trial easy, expeditious, or inexpensive, [3] the relative
> administrative difficulty in the two fora resulting from court congestion, [4]
> the local interest in deciding local controversies at home, [5] the public
> policies of the fora, . . . and [6] the familiarity of the trial judge with the
> applicable state law in diversity cases.

*Id.* at 879–80.  District courts should explicitly consider each of these factors, at least to the

extent that the parties make "arguments" about them.  *In re Link_A_Media Devices Corp.*, 662

F.3d 1221, 1224 (Fed. Cir. 2011) (citing *Jumara*, 55 F.3d at 879) (noting that it would be

"improper to ignore" any of the factors in such a circumstance).[7]

### a.    Private Interest Factors

#### i.    Plaintiff's choice of forum

---

[7]      In analyzing a motion to transfer in a patent case, it is the law of the regional
circuit (here, the Third Circuit) that applies. *Intellectual Ventures I LLC v. Checkpoint Software
Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus
Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*") (citing cases), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate, then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at *4 (internal quotation marks and citations omitted); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753 (D. Del. 2012) ("*Altera*"). On the other hand, where a plaintiff's choice of forum was made for an improper reason—such as where the choice is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it should not be afforded substantial weight. *Pragmatus I*, 2012 WL 4889438, at *4; *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this would likely weigh in favor of transfer).[8]

---

[8]     The parties' briefing regarding this first *Jumara* private interest factor focuses heavily on whether this District (where McRo is incorporated, but not where its principal place of business is located) should be considered McRo's "home turf" and how the resolution of that question should affect the weight afforded to this factor. (*See* D.I. 24 at 6-9; D.I. 30 at 6-7)  As the parties note, the judges of this Court have expressed differing views on whether a party's state of incorporation can be considered its "home turf," as that term has been used in this Court's transfer jurisprudence. (D.I. 24 at 6-8; D.I. 30 at 6-7)  The Court will not and need not resolve this question, as a determination as to whether Delaware is McRo's "home turf," in and of itself, has no independent significance regarding the overall *Jumara* balance of convenience analysis, nor to the analysis as to this first *Jumara* private interest factor.  The cases from this Court originally referencing a plaintiff's "home turf" in the transfer context explained that the burden of proof for a defendant seeking transfer "is no less where plaintiff is litigating away from its home turf." *Gen. Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 823 (D. Del. 1976);

McRo cites a number of reasons as to why it chose to file suit in this District, many of which have been oft-recognized as strong and legitimate by our Court. (D.I. 30 at 7)  For example, McRo cites the fact that it has chosen to bring suit in a District in which it is incorporated. Our Court has found that it is a legitimate, rational choice for a plaintiff to make, as such a plaintiff has already associated itself with the forum and availed itself of the benefits and consequences of the State's laws. *See, e.g., Altera*, 842 F. Supp. 2d at 754; *Nice Sys., Inc. v. Witness Sys., Inc.*, No. CIV A 06-311-JJF, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006); *Joint Stock Soc'y "Trade House Descendants of Peter Smirnoff, Official Purveyor to the*

---

*see also Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 (D. Del. 1975). That is, regardless of whether this District is or is not a plaintiff's "home turf," the same overarching standard set out by the Third Circuit for considering a transfer motion applies—the defendant must show that the balance of convenience is strongly in its favor in order to justify a transfer of venue. *Gen. Instrument Corp.*, 417 F. Supp. at 823; *Burroughs Wellcome Co.*, 392 F. Supp. at 763. Nor is reference to a plaintiff's "home turf" in this context meant to suggest that if a plaintiff is (or is not) suing on its "home turf," then as to the first *Jumara* private interest factor, a plaintiff's choice of forum should automatically be given any set amount of weight. *Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986). Instead, such a reference is really nothing more than a short-hand way of noting that, when a court balances the relative convenience of different fora as part of a transfer analysis, the "the weaker the connection between the forum and *either* the plaintiff *or* the lawsuit, the greater the ability of a defendant to show sufficient inconvenience to warrant transfer." *Affymetrix*, 28 F. Supp. 2d at 199; *see also Gen. Instrument Corp.*, 417 F. Supp. at 822-23. As the Court has noted above, the appropriate focus as to this first *Jumara* private interest factor is on the strength and legitimacy of McRo's reasons for filing suit in this District. *Cf. In re Amendt*, 169 Fed. App'x. 93, 96 (3d Cir. 2006) (citing *Jumara* and, in examining the first two private interest factors, considering the reasoning behind the parties' choices to litigate in the respective fora, and concluding that because elements of the claims "arose in [plaintiffs' preferred forum (the district where they resided) and defendant's preferred forum,]" then the weight given to these two factors effectively cancelled each other out). To the extent that the fact of McRo's incorporation in Delaware is relevant to that analysis—or to any of the other *Jumara* factors—the Court will consider McRo's corporate status in analyzing those particular factors. Since whether Delaware is deemed McRo's "home turf" has no clearly identifiable significance beyond this factor-by-factor analysis, the Court need not address the issue further here. *Cf. Sunds Defibrator, Inc. v. Durametal Corp.*, No. CIV. A. 96-483 MMS, 1997 WL 74660, at *2 & n.2 (D. Del. Jan. 31, 1997).

*Imperial Court" v. Heublein, Inc.*, 936 F. Supp. 177, 187 (D. Del. 1996). Similarly, McRo notes

that it has sued in a District in which Defendants are incorporated (and where, it claims, that

products made using the patented method are sold). These facts provide some certainty that there

will be personal jurisdiction over Defendants in this District and are also rational, legitimate

reasons as to why suit would be brought here. *See, e.g., Helicos Biosciences Corp. v. Illumina,*

*Inc.*, 858 F. Supp. 2d 367, 371-73 (D. Del. 2012) (noting that "a defendant's state of

incorporation had always been a predictable, legitimate venue for bringing suit" in that it is a

venue where a defendant can be sued); *Altera*, 842 F. Supp. 2d at 754.

      Defendants argue that McRo's choice of forum should be given less weight because, by

filing the Central District Actions, McRo "has decidedly <u>not</u> expressed a preference to litigate its

patents in this [D]istrict." (D.I. 32 at 2 (emphasis in original)) Yet by filing the *instant* cases in

this District, Plaintiff has expressed its preference—as to those particular cases—as clearly as it

could. It is not made explicit in the record why Plaintiff chose to file other litigation regarding

the patents-in-suit in the Central District, as opposed to this District. But though Defendants

suggest that the mere fact of those other filings undercuts Plaintiff's asserted reasons for filing

*these* cases in Delaware, there is not a sufficient basis for the Court to reach that conclusion here.

The Central District filings do not, for example, expressly contradict any asserted rationale

Plaintiff has put forward in arguing the instant motion. Indeed, instead of presuming

contradiction (as Defendants do), it could just as easily be presumed that there are certain

differences between the Central District Actions and the Delaware Actions that have not

necessarily been made explicit on this record, but that motivated the filings in the other

jurisdiction. *Cf. Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2013

WL 4629000, at *8 (D. Del. Aug. 28, 2013) ("*Pragmatus II*") (finding, in case where plaintiff filed instant action in this District and later filed a partially-related action in the proposed transferee district, that this fact would not temper the weight given to plaintiff's choice of forum in the instant case, as there was "nothing inherently contradictory in [p]laintiff's actions" since plaintiff never argued that it was "[im]possible for it to litigate" in the transferee district and there were other asserted reasons motivating the new filing).

Therefore, because there are clear, legitimate reasons why McRo chose this forum for suit, this factor weighs against transfer.

### ii.    Defendants' forum preference

As for the second private interest factor, the defendants' forum preference, Defendants prefer to litigate in the Central District. (D.I. 24 at 1)  In analyzing this factor, our Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus I*, 2012 WL 4889438, at *6 (citation omitted).

Defendants argue throughout their briefing that they have a number of legitimate reasons for seeking to transfer this action to the Central District, including: (1) all parties' principal places of business are located in or near that forum; (2) most of the party and non-party witnesses are located in that forum; (3) many of the relevant documents are located there. (D.I. 24 at 1-3, 9, 16)  Certain of these issues will be discussed more specifically below, as they relate to an analysis of other *Jumara* private interest factors.  Yet, as this Court has often held, the physical proximity of Defendants' places of business (and relatedly, to witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer. *See, e.g., Joao Control & Monitoring Sys., LLC v. Ford Motor Co.,* C.A. No. 12-cv-

11

1479 (GMS), 2013 WL 4496644, at *4 (D. Del. Aug. 21, 2013); *Fuisz Pharma LLC v. Theranos, Inc.*, Civil Action No. 11-1061-SLR-CJB, 2012 WL 1820642, at *12 (D. Del. May 18, 2012) (citing cases); *Altera*, 842 F. Supp. 2d at 755.

Thus, the second private interest *Jumara* factor weighs in favor of transfer.

### iii.    Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." "[A] claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). When assessing this factor, however, our Court has often focused in particular on the activity surrounding the production, design and manufacture of the allegedly infringing product. *See, e.g.*, *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139 (GMS), 2013 WL 3293611, at *3 (D. Del. June 28, 2013); *Altera*, 842 F. Supp. 2d at 755; *Wacoh Co.*, 845 F. Supp. 2d at 602.

The record as to this factor is less full that it otherwise might be. This is in significant part because Plaintiff has not identified (in its complaints or otherwise) what products it is accusing of infringement. Instead, the relevant amended complaints simply state that Defendants have "made, used, offered to sell, sold and/or imported" as yet unidentified "computer and/or video games" that were created using the covered software processes and that are purchased throughout the United States.[9] (D.I. 14 at ¶ 14) Thus, because Plaintiff has not identified what

---

[9]    For their part, Defendants have attempted to ascertain what products are at issue here—the pending motion to dismiss is in part based on the First Amended Complaints' failure to identify the accused software processes or video games. (D.I. 17 at 2)

the accused products are, it is then able to assert that "Defendants themselves admit they cannot

establish that the accused products were developed in California." (D.I. 30 at 9)

      The record as to the various Defendants' video game design, development and sales

operations is as follows:

- Activision does not design, develop or sell video games itself; instead, its subsidiaries and other affiliates do so. (D.I. 24 at 10-11 (citation omitted)) It owns 22 development studios; of the 14 located in the United States, nine operate in California, and five operate in the Central District. (*Id*. at 11 (citations omitted)) Activision's sales and marketing efforts are nationwide and worldwide, emanating from its many worldwide offices. (Declaration of Omer Salik in Support of Defendants' Motion to Transfer Venue to the Central District of California ("Salik Declaration"), D.I. 26 at ¶¶ 10-14)

- Infinity Ward is one of those Activision subsidiaries, and all aspects of its operations, including development of any accused video game, occur in the Central District. (D.I. 24 at 10-11 (citation omitted))

- LucasArts laid off its operational staff in 2013; until then all of its marketing and sales staff were based in the Northern District of California, as were its primary game development facilities (with additional facilities located in Singapore). (*Id*. at 10; *see also* Declaration of Douglas Reilly in Support of Defendants' Motion to Transfer Venue to Central District of California ("Reilly Declaration"), D.I. 27 at ¶¶ 3-6) It also sells certain games developed by non-parties, including those based in California, Texas, Florida and Australia. (D.I. 24 at 11; Reilly Declaration at ¶ 6)

- Warner Brothers sells video games through distribution arrangements with its divisions, and those games are developed by various corporate affiliates in Washington, Illinois, Canada and the United Kingdom. (Declaration of Wayne M. Smith in Support of Defendants' Motion to Transfer Venue to the Central District of California ("Smith Declaration"), D.I. 25 at ¶ 5) Its sales and marketing teams are based in the Central District. (D.I. 24 at 10; Smith Declaration at ¶ 4)

It is not seriously disputed that none of the various Defendants' design, development or sales and marketing efforts occurred in Delaware, nor that Defendants have no employees located in Delaware.  (D.I. 24 at 9-10)

In sum, then:  (1) it is a certainty that any later-accused design, development or sales and marketing activity related to Infinity Ward will have occurred in the Central District; (2) it is certainly possible, though less certain, that any later-accused design, development or sales and marketing activity related to Activision or Warner Brothers will have occurred in the Central District; and (3) it is very likely that any later-accused design, development or sales and marketing activity relating to LucasArts will have occurred in the Northern District of California.

For its part, Plaintiff argues that the claims arose in Delaware (and throughout the United States) because Defendants sell their products throughout the country.  (D.I. 30 at 8-10)  It is not disputed that some amount of accused product sales will likely have occurred in Delaware, though Defendants suggest (with some statistical support) that any such sales would be a "small fraction" of the total.  (D.I. 24 at 11; Smith Declaration at ¶ 8)

Even taking into account Defendants' nationwide sales, it appears that the primary acts giving rise to McRo's claims of infringement, in the case of the allegations against Infinity Ward, have a strong connection to the Central District (one far stronger than their connection to Delaware).  *See Altera*, 842 F. Supp. 2d at 755 (finding this factor to weigh in favor of transfer where, *inter alia*, some research and development of allegedly infringing products occurred in proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide).  In the case of the other three Defendants, the allegations relate to activity

14

that (when identified) is more likely to have some greater demonstrable connection to the Central

District (or, in the case of LucasArts, to the neighboring Northern District), than to that in

Delaware.[10] *Cf. Nilssen v. Osram Sylvania, Inc.*, No. Civ.A. 00-695-JJF, 2001 WL 34368395, at

\*3 (D. Del. May 1, 2001) (finding *Jumara* factor weighed strongly in favor of transfer based on

record evidence, despite lack of some specificity in record due to fact that plaintiffs did not

identify the "patent claims and products implicated in the lawsuit"). In such circumstances, the

Court finds that this factor weighs in favor of transfer as to Infinity Ward, and slightly weighs in

favor of transfer as to the other three Defendants. *See Osteotech, Inc. v. GenSci Regeneration*

*Scis., Inc.*, 6 F. Supp. 2d 349, 357 (D.N.J. 1998) (noting that "as a general rule, the preferred

forum is that which is the center of gravity of the accused activity[,]" that is, that a district court

"ought to be as close as possible to the milieu of the infringing device") (internal quotation marks

and citations omitted).

### iv. Convenience of the parties as indicated by their relative physical and financial condition

In assessing the next private interest factor—"the convenience of the parties as indicated

by their relative physical and financial condition"—this Court has traditionally examined a

number of issues. These have frequently included: "(1) the parties' physical location; (2) the

associated logistical and operational costs to the parties' employees in traveling to Delaware (as

opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of

each party to bear these costs in light of its size and financial wherewithal." *Audatex*, 2013 WL

---

[10]      As noted above, LucasArts' principal place of business is in San Francisco.
Plaintiff does not argue that the relative difference in the geographic location of LucasArts' place
of business in the Northern District, as compared to the other Defendants' presence in the Central
District, makes a difference for purposes of the analysis of the *Jumara* factors here.

3293611, at *4 (citations omitted); *McKee v. PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013

WL 1163770, at *4 (D. Del. Mar. 20, 2013) (citations omitted).

      Defendants argue that because their businesses are centered in California, litigating in the

Central District would be "substantially" less expensive and inconvenient. (D.I. 24 at 12)  They

also argue that there is "no convenience benefit to [McRo] from litigating in Delaware" because

McRo is located "within the Central District[,] and thousands of miles from Delaware." (*Id.*)

For its part, McRo does not argue that litigating in the Central District would be inconvenient for

it or even less convenient than litigating in Delaware. (D.I. 30 at 11)  Instead, it asserts that

because Defendants are Delaware corporations, they cannot now argue that it is inconvenient for

them to be sued here. (*Id.*)  McRo also states that Defendants failed to specify why litigating in

Delaware would be more expensive, particularly where "[t]he only events that are likely to occur

in Delaware are the claim construction hearing and any hearings on non-discovery motions." (*Id.*

at 12)

      In cases like this one—where all parties have their principal places of business in (or very

near to) the transferee district, even though Delaware is their place of incorporation—our Court

has tended to recognize that some net gain in party convenience would occur were the case to

proceed in the transferee district. In one such recent case, this Court, citing the "inevitable costs

and disruptions that cross-country litigation imposes" explained:

> Here, although both parties have a national presence, neither has a
> physical presence in Delaware and instead operate out of the
> [proposed transferee district in California]. Therefore, should the
> action remain in Delaware, it is likely that both parties will incur
> travel costs. Presumably, however, because both have their
> principal place of business in the proposed transferee district, the
> cost of litigating in California would be less than litigating in this

> District. . . . [B]ecause both parties operate out of the proposed
> transferee district and relevant witnesses live in that District or in
> close proximity to it, the court finds that litigating in the [proposed
> transferee district] would prove more convenient for both.

*Audatex*, 2013 WL 3293611, at *4-5 (internal quotations and citations omitted); *see also Altera*,

842 F. Supp. 2d at 755-56.

On the other hand, here there are a number of factors suggesting that if a net gain in

convenience exists, its magnitude is not outsized. For example, our Court has noted that one

aspect of a company's decision to incorporate in Delaware is an agreement to submit itself to the

jurisdiction of the courts in this State for the purpose of resolving certain legal disputes. *Altera*,

842 F. Supp. 2d at 756. In light of that, it would seem incongruous were Defendants to assert, or

the Court to conclude, that Delaware is a decidedly inconvenient locale for Defendants to defend

a lawsuit. *Id.* (citing *Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)).

Moreover, while there would be some additional inconvenience to Defendants' employee

witnesses, were they obligated to travel to Delaware for pre-trial or trial proceedings, the amount

of such travel is not likely to be large—particularly if this case does not result in a trial. *See, e.g.,*

*Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS,

2011 WL 2911797, at *7 (D. Del. July 18, 2011) (noting that the likelihood that few case events

would occur in Delaware—particularly few if the case did not go to trial—weighed against

transfer, as did technological advances that allow traveling employees to more easily interact

with their office while away). Lastly, there is nothing in the record to indicate that, in light of the

Defendants' size or financial status, litigating in Delaware would impose a large or *undue*

financial burden on them. Indeed, there is nothing in the record that demonstrates that litigating

in either forum-at-issue would impose a serious or undue logistical or operational burden on any party.

In the end, in line with other cases involving similar circumstances, the Court concludes this factor weighs in favor of transfer, but only slightly. *See, e.g., Audatex*, 2013 WL 3293611, at *4-5; *Altera*, 842 F. Supp. 2d at 755-56.

### v.     Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 569 (D. Del. 2001). In explaining how the concerns implicated by this factor relate to the different types of witnesses who might testify at trial, this Court has noted:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. . . . Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.". . . Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

*Affymetrix,* 28 F. Supp. 2d at 203 (citations omitted). Of particular concern, then, are fact

witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp.*, 138 F. Supp. 2d at 569.

As an initial matter, our Court has noted that the practical impact of this factor is limited, in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live). *Cellectis*, 2012 WL 1556489, at *6 & n.6; *Altera*, 842 F. Supp. 2d at 757-58. A party's ability to put forward testimony of witnesses of its choosing at trial is, of course, important; these cases simply recognize that the impact of this factor has to be tempered a bit by the unlikely event of a trial's occurrence.

Defendants nevertheless argue that this factor strongly favors transfer. In doing so, they highlight certain categories of likely non-party trial witnesses who are subject to the subpoena power of the Central District, but who could not be compelled to appear by subpoena in this Court, including: (1) authors, inventors and/or assignees of certain prior art references; and (2) individuals identified in McRo's Initial Disclosures in the Central District Actions, pursuant to Rule 26(a)(1).[11]  (D.I. 24 at 13-15)  Of particular note is Defendants' focus on the latter group.[12]

---

[11]   Defendants also assert that their own employees are located in California, and that this fact also weighs in favor of transfer. (D.I. 24 at 13) However, as noted above, "witnesses who are employed by a party carry no weight in [this] analysis[,]" *Affymetrix*, 28 F. Supp. 2d at 203, and, in any event, are already taken into account in an analysis of the "convenience of the parties" private interest *Jumara* factor.

[12]   As to the former group, the Court finds little value in Defendants' citation to their respective locations. This is in part because it is decidedly unclear to the Court whether some or any such persons will actually be relevant to the case or be needed to testify at trial. But it is also due to the fact that the respective home locations of these persons are varied, with some number living in areas that would likely render a trial in California more convenient, and some living in areas that would make a trial on the East Coast more convenient. (D.I. 24 at 14; Declaration of Eric Berger in Support of Plaintiff Planet Blue's Opposition to Defendants' Motion to Transfer,

There, Defendants have noted that in the Central District Actions, McRo identified 32 specific persons who have knowledge of relevant facts, all but one of whom would be considered non-parties to the instant cases. (D.I. 24 at 14-15; Declaration of Sonal N. Mehta In Support of Defendants' Motion to Transfer Venue to the Central District of California ("Mehta Declaration"), D.I. 28, ex. M at ¶¶ 1-32) These individuals include Plaintiff's former employees, the prosecuting attorney for the patents-in-suit (who no longer works with the law firm that was engaged for this purpose), and various current or former employees of non-party companies that engaged in collaborations with Plaintiff involving technology related to the patents-in-suit. (*Id.*) Defendants have put forward evidence suggesting that at least 28 of these persons live in California, 20 in the Central District, and that all but one (who resides in New York) lives far closer to the Central District than to Delaware. (D.I. 24 at 14-15; Mehta Declaration, ex. O)

In this way, Defendants have made a record that, at a minimum, suggests that of the relevant non-party witnesses who might *possibly* testify at trial, an overwhelming number of them would likely find appearing for trial more convenient in the Central District than this District. And McRo, for its part, has pointed to no possible trial witness who lives in or very near to Delaware. (*See* D.I. 32 at 5 (Defendants asserting that McRo failed to "identify a single witness who may be relevant to these actions anywhere within the subpoena power of this Court.")) In such a circumstance, the Court is prepared to give some weight to Defendants' arguments regarding convenience of likely non-party trial witnesses. *See Pragmatus I*, 2012 WL 4889438, at *10-11; *cf. Fuisz Pharma*, 2012 WL 1820642, at *15 (finding this factor to be neutral, but only where both parties identified potential non-party trial witnesses who lived closer

---

D.I. 31 at ¶ 3)

to the respective competing venues at issue, and the parties' submissions were otherwise unpersuasive as to the issue of trial unavailability).

The amount of weight, however, should be tempered by a number of factors. First, there is little in the record as to how likely it is that any of these persons will actually be required to testify at trial (or, relatedly, as to how significant the substance of that testimony will be to disputed issues at trial). Second, other than the bare fact that these individuals reside in California, and are therefore subject to the Central District's subpoena power (but not the subpoena power of this Court), there is minimal factual basis upon which the Court can assess whether they would be willing or unwilling to testify in this District. All of the cited individuals had some type of relationship with Plaintiff in the past, either via in-house employment, attorney-client relationship, or corporate collaboration. Absent some concrete evidentiary showing that these individuals, formerly aligned with Plaintiff, would be unlikely to testify, it is difficult to give Defendants' argument as to their potential unavailability significant weight. *See, e.g.*, *Pragmatus I*, 2012 WL 4889438, at *10-11; *Tessera, Inc. v. Sony Elec. Inc.*, Civil No. 10-838 (RMB) (KW), 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012); *Carl Zeiss Meditec, Inc. v. XOFT, Inc.*, C.A. No. 10-308-LPS-MPT, 2010 WL 4024603, at *2 (D. Del. Oct. 13, 2010).

In light of these deficiencies, Defendants have provided a basis to conclude that this factor should weigh in favor of transfer, though only slightly. *See, e.g.*, *Pragmatus I*, 2012 WL 4889438, at *10-11; *Altera*, 842 F. Supp. 2d at 757-58.

### vi.   Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

21

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted).

This factor is commonly given little weight, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another."  *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted); *see also Cellectis*, 2012 WL 1556489, at *6; *ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles.").  Yet while the practical reality of these advances in technology may alter the weight given to this factor, a court should not ignore the factor entirely.  *Link_A_Media*, 662 F.3d at 1224.

Even in light of the uncertainty regarding the accused products at issue, it is not disputed that the majority of relevant documentation regarding the claims and defenses in this case will be located in or near the Central District and none in Delaware.  (*See* D.I. 24 at 16 (Defendants citing, as to those documents likely to be located in or near the Central District:  marketing and sales documents regarding accused products and technology, and documents concerning conception and reduction to practice, licensing, commercialization, prosecution, assignment and ownership of the patents-in-suit); D.I. 30 at 15-16 (Plaintiff failing to take issue with this

22

assertion)) Nor is it disputed that, even in light of this, such books and records will be produced electronically among the parties, and will be transported (for trial or for other court events) primarily in electronic form. (D.I. 30 at 15-16; D.I. 32 at 6)

In such circumstances, where the relevant documents are predominantly located in the transferee forum, but the burden to produce the relevant documents in Delaware (as opposed to the transferee forum) is minimal, our Court has often found this factor to weigh in favor of transfer, though only slightly. *See, e.g., Joao Control*, 2013 WL 4496644, at *6; *Altera*, 842 F. Supp. 2d at 759; *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 485 (D. Del. 2011) ("*Checkpoint Software*"). The Court comes to the same conclusion here.

### b.      Public Interest Factors

#### i.      Enforceability of judgment

Neither party has offered any reason why a judgment entered in either district would not be given full faith and credit. This factor is neutral. *See In re DVI Inc.*, No. 03-12656 MFW, Civ.A. 04-170 JJF, 2004 WL 1498593, at *3 (D. Del. June 23, 2004) (citing *Hechinger Inv. Co. of Delaware, Inc. v. M.G.H.*, 288 B.R. 398, 403 (Bankr. D. Del. 2003)).

#### ii.      Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court next considers the "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The most significant practical considerations are the presence of the Central District Actions and the nine other related cases in this District (in six of which, the defendant has not filed a motion to transfer). (*See* D.I. 24 at 1-

23

19; D.I. 30 at 16-18); *see also Ross v. Institutional Longevity Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("In examining this *Jumara* factor, our Court has often cited the existence of related lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into account."). As noted *supra*, these cases each involve infringement claims brought by Plaintiff against a different defendant, regarding different products, but all involving allegations of infringement of the patents-in-suit.

McRo argues that "[t]ransferring the present cases to the Central District []would not achieve any judicial efficiencies and may actually increase the judicial burden on the federal court system" because even if the Court granted all the pending motions to transfer in the related Delaware cases, other related cases would still proceed in this District. (D.I. 30 at 16-17) Citing the decision in *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, C.A. No. 12-cv-210-LPS, 2013 WL 3295618 (D. Del. June 28, 2013), McRo states that "even if the present case[s] were transferred to California, the Court would still need to learn the technology claimed in the asserted patents, construe the claims of those patents, resolve summary judgment motions (if any), address the parties' discovery disputes, and ultimately try the cases that proceed to trial." *Graphics Props.*, 2013 WL 3295618, at *7 (finding this factor "weighs heavily against transfer"); (D.I. 30 at 17). Indeed, in numerous cases where a single defendant sought to transfer its case—thereby seeking to separate that case from other related, pending cases that would remain in this District regardless of how the motion to transfer was decided—our Court has recognized the efficiencies that could be captured were the motion denied and all related cases litigated together here. *See, e.g., Graphics Props.*, 2013 WL 3295618, at *7; *Schubert v. Cree, Inc.*, Civil Action No. 12-922-GMS, 2013 WL 550192, at *5 (D. Del. Feb. 14, 2013); *AIP Acquisition LLC*

24

*v. iBasis, Inc.*, Civil Action No. 12-616 GMS, 2012 WL 5199118, at \*5 (D. Del. Oct. 19, 2012).

This case, however, has the complicating fact of also having pending, related litigation in the

transferee district.[13]

On the one hand, were the instant cases transferred to the Central District, they may, as

Defendants suggest, be administered by the same District Judge overseeing the Central District

Actions and proceed on the same schedule with those other actions. (D.I. 32 at 8)  And because

these cases involve the same plaintiff, same patents, and (in some cases) defendants who share

---

[13]    The Federal Circuit's ruling in *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir.
2013), raised doubts about whether a court may ever consider facts occurring "after the filing of a
suit" in resolving a motion to transfer. *See also Pragmatus II*, 2013 WL 4629000, at \*4-5. Here,
certain of the instant four actions were obviously filed after others (albeit all were filed on the
same day), certain of the other related cases in this District were filed after the instant four cases,
and all of the Central District Actions were filed approximately two weeks after the instant four
cases. (D.I. 24 at 1)  As a technical matter, then, the filing of many of the cases discussed in this
subsection could be considered acts occurring after the filing of certain of the instant four suits
(although none of the parties here suggest that the existence of any of these cases—those in this
District or the Central District Actions—are irrelevant to the instant motion).  Reading *In re
EMC Corp.* in light of other recent Federal Circuit cases and other Supreme Court case law,
*Pragmatus II*, 2013 WL 4629000, at \*4-5 (citing cases), the Court concludes that it is not *per se*
impermissible, when considering "practical considerations" regarding judicial economy in this
context, to consider the existence of other related litigation filed in the proposed transferor or
transferee districts, even if filed after the instant actions.  Nor is it impermissible to consider the
likelihood of future efficiencies that can be predicted at the outset of a litigation, due to the fact
that a number of related cases were filed together along with the instant case. *See, e.g., Round
Rock Research LLC v. ASUSTeK Computer Inc.*, Civil Action No. 11-978-RGA, 2013 WL
4478231, at \*9 (D. Del. Aug. 20, 2013) (citing *In re EMC Corp.*, 501 F. App'x at 976).  In
contrast, at the other extreme, it would contravene the intent behind the *Jumara* transfer analysis
were a court to gain familiarity with a case after a transfer motion is filed and after "years of
litigation prior to a determination on a transfer motion" occurred, and then cite to the potential
loss of that long-standing familiarity as the sole reason why judicial economy would be harmed
were the case transferred. *In re EMC Corp.*, 501 F. App'x at 975-76.  This is not that latter
scenario.  Here, the arguments center around the impact of (1) a group of related cases largely
filed together in this District (that have not yet progressed further in litigation here); and (2) a
group filed soon after (and before the filing of the instant Motion) in the Central District.  The
Court will therefore consider the existence of these cases in examining this *Jumara* factor.

corporate affiliations, the cases might be more easily managed together than would cases with fewer similarities.

On the other hand, any net gain to judicial efficiency can rightly be said to be blunted, as McRo notes, (D.I. 30 at 17), by the fact that it appears that neither granting or denying the Motion will prevent related cases from going forward in both districts, nor prevent two sets of judges from needing to familiarize themselves with the relevant patents, technology and legal issues. And, as Plaintiff notes, (*id.*), it is possible that because the instant cases and Central District Actions were filed at different times and are on different scheduling paths, were the instant cases to remain in this District and "proceed on their own common schedule[,]" this would increase procedural efficiency to a greater degree than would merging these cases with the Central District Actions.

Under these particular (and perhaps somewhat unique) circumstances, the existence of related litigation in both districts and the difficulty in predicting what will occur in the future convinces the Court that this factor should not favor either side. Thus, the Court finds this factor to be neutral.

### iii.     Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion[.]" *Jumara*, 55 F.3d at 879. Defendants assert that this factor favors transfer. (D.I. 24 at 20) Defendants cite statistics showing that in 2012, the median time to trial for civil cases in the Central District was 15.3 months less, and the average time to disposition 2.9 months less, than that in this District. (*Id.*) Defendants also note that over a period of approximately eight months from November 2012 to July 2013, more than 1,000 patent cases were filed in this

26

District (with 280 assigned to the District Judge here), while only 295 patent cases were filed in the Central District (an average of "roughly 8 patent cases per district judge"). (*Id.*) McRo does not dispute these figures, nor cite to statistics of its own. (D.I. 30 at 19) Instead, it argues that this factor does not favor transfer because this Court no longer has a judicial vacancy and because "cases in this District are typically scheduled consistently with the parties' proposals rendering administrative difficulties neutral." (*Id.*)

For guidance, the Court looks to this Court's recent opinion in *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.* In *Audatex*, the proposed transferee district's average time to disposition was 5.1 months less than in this District, but its average time to trial was 2.65 months longer than that in this District. *Audatex*, 2013 WL 3293611, at *7. Statistics showed that each district judge in this District averaged approximately 253 patent cases, while district judges in the proposed transferee district averaged only about 13. *Id.* This Court also noted in *Audatex* that the statistics cited by Defendant included cases dating from three to six years prior, and thus these statistics did not fully take into account the recent "filling of vacant judgeships in this District[.]" *Id.* Nevertheless, this Court weighed the factor slightly in favor of transfer. *Id.*; *see also Beacon Navigation GmbH v. Chrysler Grp. L.L.C.*, C.A. Nos. 11-cv-921 (GMS) et al., 2013 WL 1163943, at *11 (D. Del. Mar. 20, 2013) (finding that this factor weighed slightly in favor of transfer where, on average, cases in the transferee district proceeded to trial 4.7 months faster than cases in this District).

Defendants' showing here as to relative court congestion is stronger. While the picture was more mixed in *Audatex*, here Defendants' cited statistics demonstrate that the Central District's timing to case disposition and time to trial are lower in each category, and far lower in

27

the latter category.[14]  The nature of the patent docket in the respective districts is similar to what

it was in *Audatex*.  And unlike the case in *Audatex*, where the relevant data included years in

which this District did not have a full compliment of judges, here Defendants cite to statistics

from 2012 and 2013, a period in which this Court has had a full compliment.  *Cf. Ivoclar*

*Vivadent AG v. 3M Co.*, Civil Action No. 11-1183-GMS-SRF, 2012 WL 2374657, at *13 (D.

Del. June 22, 2012) (a June 2012 opinion noting that statistical disparities between this District

and the proposed transferee district from 2010-2011 were not a reliable measure of the relative

administrative burdens because "[s]ince the issuance of those statistics, the judicial vacancy on

this Court and a third Magistrate Judge position have been filled").

    In light of the showing made by Defendants on this point, which suggest that there could

be a meaningful difference in the progression of the case to trial in the respective districts, the

Court finds this factor to favor transfer.

### iv.    Local interests in deciding local controversies at home

    In patent litigation, the local interest factor is typically neutral, as patent issues tend to

raise controversies that are more properly viewed as national, not local, in scope.  *Graphics*

*Props.*, 2013 WL 3295618, at *7.  Nevertheless, "[w]hile the sale of an accused product offered

nationwide does not give rise to a substantial interest in any single venue . . . if there are

significant connections between a particular venue and the events that gave rise to a suit, this

---

[14]    These collective disparities, and particularly the average time to trial, are far
greater than they have been in cases where the factor has been deemed neutral.  *See, e.g.*,
*Pragmatus I*, 2012 WL 4889438, at *13 (concluding that the relative court congestion did not
favor transfer in part due to the fact that the transferee district's average time to trial was only .85
months less than this District, and the average time to disposition was 3.1 months less);
*Checkpoint Software*, 797 F. Supp. 2d at 486 (concluding the same, where the difference in time
to trial favored the transferee district by 3.7 months, an "'inconsequential'" amount).

factor should be weighed in that venue's favor." *In re Hoffman–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted); *see also Graphics Props.*, 2013 WL 3295618, at *7.

Defendants suggest that the Central District has a local interest regarding these actions because California is the place where "over 3,000 of [] Defendants' employees who would truly be affected by the outcome of this controversy are located[.]" (D.I. 24 at 19)  The Court recognizes the possibility that Defendants' employees in California may be affected by the outcome of this litigation, but this consideration is tempered by the fact that there is little in the record to gauge how deep or meaningful that impact might be.

McRo, on the other hand, argues that Delaware "has a strong interest in adjudicating disputes between two Delaware corporations[,]" and therefore this factor "weighs heavily against transfer."[15] (D.I. 30 at 18-19)  It is true that "Delaware has a strong interest in adjudicating disputes among its corporate citizens[,]" particularly in a case involving litigation "solely among Delaware corporations." *Altera*, 842 F. Supp. 2d at 760.  This interest, however, is counterbalanced here by the fact that Defendants and McRo are all headquartered in or near the Central District. *Checkpoint Software*, 797 F. Supp. 2d at 486; *Altera*, 842 F. Supp. 2d at 760.

---

[15]     McRo also argues that Defendants here simply "repeat[ed] arguments regarding the location of [their] . . . [principal] place[s] of business, which have been addressed under other *Jumara* factors[,]" and thus, Defendants' arguments as to this factor would result in improper "double-count[ing.]" (D.I. 30 at 18)  The Court disagrees.  The fact that a company's principal place of business is located in a particular district (along with many of its employees) might well have impact on more than one *Jumara* factor, without necessarily raising "double-counting" concerns.  For example, it might be relevant to the private interest factor regarding "whether the claim arose elsewhere" (if those employees engaged in allegedly infringing conduct in the location of the principal place of business) and on this factor regarding "local interests" (if, for example, it could be shown that a large number of such employees would be detrimentally affected by the outcome of the case).  But in that circumstance, the fact would be relevant in different ways, and for different reasons, depending on the *Jumara* factor at issue.   .

With both sides able to claim some tangible local interest, but with the nature of that interest also mitigated by other considerations, the Court finds this factor to be neutral. *Checkpoint Software*, 797 F. Supp. 2d at 486; *Altera*, 842 F. Supp. 2d at 760.

### v.     Public policy of the fora

Neither party argues that the next factor, regarding the public policy of the respective fora, should impact the transfer analysis. The Court thus finds this factor to be neutral. *Helicos Biosciences*, 858 F. Supp. 2d at 375.

### vi.     Familiarity of the trial judge with applicable state law in diversity cases

This is not a diversity case. "[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotation marks and citation omitted); *see also Altera*, 842 F. Supp. 2d at 760 (same). This factor is therefore neutral.

### c.     Conclusion Regarding Impact of *Jumara* Factors

In sum, Defendants' forum preference and the relative administrative difficulty in the two fora resulting from court congestion weigh squarely in favor of transfer. So too does whether the claim arose elsewhere, in the case of Defendant Infinity Ward (and it does slightly in the case of the other three Defendants). Three other factors—convenience of the parties, convenience of the witnesses, and the location of books and records—also weigh in favor of transfer, though slightly. The only factor that weighs squarely against transfer is Plaintiff's choice of forum.

Ultimately, after careful consideration of all of the *Jumara* factors and the law interpreting them, the Court concludes that Defendants have demonstrated that the balance of

30

convenience is strongly in their favor. The issue is not free from doubt, and the Court recognizes

the significance of the parties' choice of Delaware as their State of incorporation and the fact that

there are related cases pending here. However, those connections do not sufficiently

counterbalance the substantial ties between the Central District and these cases, as is reflected in

the number of *Jumara* factors weighing in favor of transfer. *See, e.g., Verint Sys. Inc. v.

CallCopy Inc.*, Civil Action No. 13-562-GMS, 2013 WL 5338008, at \*1, \*4 (D. Del. Sept. 23,

2013) (granting motion to transfer venue in case where all parties were Delaware corporations,

but *Jumara* factors nevertheless weighed strongly in favor of transfer); *Audatex*, 2013 WL

3293611, at \*1, \*8 (same); *Fortinet, Inc. v. FireEye, Inc.*, Civ. No. 12-1066-SLR, 2013 WL

2111671, at \*1, \*4 (D. Del. May 16, 2013) (same). This is particularly so where Defendants seek

transfer to a district in or near which all of the parties are located and where numerous other

related cases involving the Plaintiff, the patents-in-suit and companies affiliated with Defendants

are also pending.

The Court therefore recommends that the instant cases be transferred to the Central

District.

### d. McRo's Request for "Jurisdictional Discovery"

McRo also argued that if the Court was not convinced that the instant Motion should be

denied, then it should be granted "limited jurisdictional discovery" because such discovery "may

provide evidence of the location of relevant [non]-party witnesses and documents related to the

design and development of the lip-synchronization and facial animation used in Defendants'

games." (D.I. 30 at 19-20) It argues that such discovery is needed because Defendants claim

"generically that their games 'in large part, originate' in California" but "do not address" who

31

was involved in the design and development of those games. (*Id.*)  It suggests that discovery would "provide this information and may identify relevant [non-]parties within the subpoena power of the District of Delaware." (*Id.*)

The Court recommends that McRo's request for jurisdictional discovery be denied, for at least three reasons. First, McRo has cited to no case where this Court has granted a motion seeking discovery solely to resolve a motion to transfer venue, and the Court is aware of none. (*See* D.I. 30 at 19-20); *see also Verint Sys.*, 2013 WL 5338008, at *3 (denying plaintiff's request for venue discovery because plaintiff did not provide case law supporting grant of request for such discovery).[16]  Second, as Defendants note, (D.I. 32 at 10), although Plaintiff was not previously ordered to identify the accused games, the only reason that Defendants "do not address" who was involved in designing and developing any such games is because Plaintiff has not given any identification as to what games they are.  The Court finds the basis for granting a request for such discovery to be weak where the request is premised on uncertainty in the record that could have been assuaged by Plaintiff (as opposed to one premised on the need for information that is wholly out of the plaintiff's own control). *Cf. Vandeveire v. Newmarch*, Civil Action No. 13-4033 (DMC), 2013 WL 6054804, at *2-3 (D.N.J. Nov. 15, 2013) (granting plaintiffs' request for jurisdictional discovery, in part, where plaintiffs argued that "despite diligent efforts, they have been unable to obtain information necessary to establish jurisdiction"); *Brown v. AST Sports Sci., Inc.*, No. Civ.A. 02-1682, 2002 WL 32345935, at *10 (E.D. Pa. June

---

[16]     *Cf. Hollander v. Hospira, Inc.*, Civil Action No. 2:10-CV-00235-JD, 2010 WL 4751669, at *3 (E.D. Pa. Nov. 22, 2010) (denying plaintiff's request for discovery to assist in establishing contacts between defendant and transferor venue); *Optimal Interiors, LLC v. Hon Co.*, Civil Action No. 09-cv-1906, 2009 WL 3837409, at *5 (E.D. Pa. Nov. 13, 2009) (same).

28, 2002) (denying request for jurisdictional discovery where plaintiffs did not "provide any reason why they were unable to procure the information they needed"). Third, and perhaps most importantly, Plaintiff does not provide a sufficient basis for the Court to conclude that the discovery it seeks will aid it in establishing a connection between its claims and this District, particularly in light of Defendants' record evidence regarding the location of their design or development activity, and that none of that activity occurred in Delaware. (*See* D.I. 24 at 10-11); *see also Eclipse IP, LLC v. ECCO USA, Inc.*, Civil Action No. 5:12CV160, 2013 WL 5838675, at \*6 (N.D. W. Va. Oct. 30, 2013); *Optimal Interiors, LLC v. Hon Co.*, Civil Action No. 09-cv-1906, 2009 WL 3837409, at \*5 (E.D. Pa. Nov. 13, 2009). Thus, it appears highly unlikely that McRo could alter the balance of certain private interest *Jumara* factors, even if it were granted such discovery.

For these reasons, I recommend that the Court deny McRo's request for discovery.

## III.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT the Motion and transfer the instant cases to the Central District of California. The Court also recommends that Plaintiff's request for discovery be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website,

located at http://www.ded.uscourts.gov.

Dated: December 13, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE